IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT MORRIS-EL, :
       Plaintiff, :
       v. : Civil Action No. 00-200J
FRANCIS MENEI, CHAPLAIN, JOHN :
McCULLOUGH, SUPERINTENDENT, :
S.C.I. HOUTZDALE, and FREDERICK :
BIGELOW, FACILITY PROGRAM :
DIRECTOR, S.C.I. HOUTZDALE, :
       Defendants :

Report and Recommendation

Recommendation

       Defendants move for summary judgment. docket no. 33. I recommend that summary judgment be granted to all defendants.

Report

       Plaintiff was incarcerated at S.C.I. Houtzdale until on or about July 8, 2002. docket no. 14. Plaintiff filed a civil rights complaint in August 2000, against defendant Francis Menei, an employee in the central office of the Pennsylvania Department of Corrections who is responsible for final processing of requests for religious accommodation. The complaint failed to state any claim, but plaintiff submitted an amended complaint, also naming as defendants John McCullough, the warden at S.C.I. Houtzdale, and Frederick Bigelow, the facility program director there. The amended complaint stated two claims: that the defendants violated his First Amendment rights by 1) confiscating plaintiff's religious button; and 2) denying plaintiff's requests to establish and otherwise accommodate a separate Moorish Science faith community at S.C.I. Houtzdale.

The defendants moved to dismiss the complaint, docket no. 10, I recommended that the button claim be dismissed but that the religious group request proceed, docket no. 15, and Judge Smith adopted those recommendations. docket no. 16.

In March 2005, plaintiff attempted to amend his complaint to add additional claims and defendants on the basis of allegations concerning conditions at S.C.I. Fayette. See docket no. 25. I denied that motion without prejudice to plaintiff filing a separate complaint addressing issues at that prison. docket no. 31. After the extension of pretrial deadlines, defendants filed a properly supported motion for summary judgment on the remaining claim, docket no. 33, docket no. 34, docket no. 35.

Plaintiff's complaint should be dismissed for failure to prosecute. Plaintiff was advised that he had to file his pretrial statement or his complaint would be dismissed for failure to prosecute, see docket no. 31, and plaintiff did file a pretrial statement, docket no. 32, which attempts to smuggle in the amendments that had been denied. Plaintiff was advised in the same order scheduling the filing of the pretrial statement of his obligation to answer the summary judgment motion. Plaintiff has not answered. Even though I did not end each sentence of my pretrial order with notice that failure to comply would result in dismissal for failure to prosecute, that is hardly necessary.

Lacking any response to the summary judgment motion, I have examined plaintiff's pretrial statement and all of the documents submitted by plaintiff in this matter. As originally submitted, plaintiff sought a variety of changes in prison practice in January 2000. Those requests included eight specific actions: (1) separate religious services on Friday; (2) shower facilities before those services; (3) separate religious instructional periods; (4) recognition of specific holy days, by permitting separate meetings and (5) separate meals on feast days; (6) payment of religious contributions directly to the Home Office of the Moorish Science Temple of America; (7) wearing distinct religious headgear (a red fez with black tassel); and (8) recognition of a particular company as an "approved vendor." docket no. 33-3, Attachment A. The plaintiff's pretrial statement makes no attempt to analyze individually the legal issues applicable to these separate requests. In fact, aside from the blanket claim inadequate even at the pleading stage that "the right to freely practice his religion" was denied, docket no. 32 at 1, in his pretrial statement plaintiff only mentions the issue of separate religious services. Any claims dealing with any other issue should be considered abandoned.

Assuming that plaintiff's abandonment of this litigation after six years does not merit complete dismissal for failure to prosecute, summary judgment on the merits should be granted to each

3

defendant on the merits of the First Amendment claim that plaintiff should have separate religious services, and on the basis of qualified immunity. I do not recommend summary judgment on the defendants' defense that plaintiff failed to exhaust administrative remedies, because the record is clear that by pursuing the matter to the Pennsylvania Department of Corrections' central office, plaintiff pursued all the administrative remedies that were available to him.

Civil litigation, even of constitutional law issues, cannot separate the factual context of a matter from the legal issues the facts raise: judging is not an academic exercise in analyzing hypothetical issues. As a result of the limitation of federal jurisdiction to actual cases and controversies, summary judgment is "regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules... ." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Federal Rule of Civil Procedure 56(c) **requires** the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[T]he requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). An issue of fact is genuinely disputed if the

4

evidence presented to the court is such that under the applicable substantive law a reasonable jury might return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 257. That necessarily implies that parties have a duty to come forward at the summary judgment stage with evidence showing that there is a legitimate cause of action, and cannot wait in the expectation that they will be able to produce evidence at trial. See In re B. D. International Discount Corp., 701 F.2d 1071, 1077 n.11 (2d Cir.), cert. denied, 464 U.S. 830 (1983).

Because litigation of its nature involves attempts to establish or refute claims that particular individuals took concrete actions that resulted in injury to a particular plaintiff's legal interests, the discovery process is essential to determining what role each defendant played in the events at issue. Claims of generalized adverse action by parties not named as defendants do not prevent summary judgment because the issue of each defendant's liability must be analyzed separately. See Rouse v. Plantier, 182 F.3d 192, 200 (3d Cir.1999)(issues of qualified immunity must be separately addressed for each defendant).

I

With even this minimal proposition laid out - that to establish liability a plaintiff must produce evidence that a defendant took some action adverse to him - it is clear that summary judgment must be entered in favor of defendants McCullough

5

and Bigelow. As defendants' unopposed statement of facts shows, McCullough and Bigelow voted in favor of parts of plaintiff's request to establish a separate Moorish Community at S.C.I. Houtzdale, specifically the requests to hold separate services and prayers with separate religious leaders. See docket no. 33-3, Attachment B. These two defendants also voted in favor of the request for separate instructional classes, Bigelow specifically explaining that grouping Moorish Scientists with Sunni Muslims was improper because those "two groups are incompatible." docket no. 33-3 at 9. These two defendants could probably not be considered to be the legal cause of injury to plaintiff even if they had voted against plaintiff's requests because the decision to deny the requests was made at Pennsylvania Department of Corrections' central office (apparently by defendant Menei). But to say that there is an issue of fact as to their liability despite their action in favor of plaintiff because they were overruled (or because Bigelow was the one who communicated the final decision to plaintiff, docket no. 33-3 at 11, Attachment C) would be absurd.

II

As for defendant Menei, his liability would turn on the application of the four factor test of Turner v. Safley, 482 U.S. 78 (1987) and O'Lone v. Shabazz, 482 U.S. 342 (1987), which requires the court to consider whether there: 1) is a rational connection between the prison's action or regulation and the

6

legitimate government interest put forward to justify it; 2) is there an alternative means of exercising the right that remains open to the inmate; 3) will the accommodation of the asserted constitutional right have any impact on guards, on other inmates, and on the allocation of the prison's resources; and 4) are there ready alternatives to the restriction. O'Lone v. Estate of Shabazz, 482 U.S. at 350-53; see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 338-44 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).

In the eleventh hour motion to amend, plaintiff attempted to add a claim under Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.§ 2000cc-1(a)(1)-(2), which provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." See Cutter v. Wilkinson, 544 U.S. 709, 125 S.Ct. 2113 (2005)(upholding RLUIPA against a facial challenge based on the Establishment Clause). I denied the amendment because of its lateness, but even if the standard under RLUIPA would differ from the Turner v. Safley test, RLUIPA would not apply to plaintiff's claims because the effective date of RLUIPA was September 22, 2000, and all of the facts relevant to liability in this suit, including plaintiff's denial of accommodation by the

7

Pennsylvania Department of Corrections were completed no later than March 21, 2000. See docket no. 33-3 at 11, Attachment C. Further, RLUIPA does not contemplate recovering damages from individuals, such as the defendants. Instead, RLUIPA provides for "appropriate relief against a government." 42 U.S.C. § 2000cc-2a. The only appropriate relief in this matter would be injunctive relief, and as I wrote several years ago, any claim for injunctive relief was mooted by plaintiff's transfer.

Before analyzing the record in light of Turner v. Safley, however, it is necessary to point out a fatal factual deficiency in plaintiff's case. Assuming (as defendants do) that plaintiff has third party standing to advocate the rights of his co-religionists at S.C.I. Houtzdale in 2000, there is nothing in the record to indicate how many such persons there are. I have repeatedly quoted the Supreme Court's plain statement that a prison is not required to recognize every religious group no matter what its size, see Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)("We do not suggest, of course, that every religious sect or group within a prison--however few in number--must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand.") but plaintiff has made no effort to show that his requested accommodation would have had a benefit to anyone but

8

himself. Even if were the case that there were 1000 similarly situated inmates at S.C.I. Houtzdale, that fact does not appear in the record of this case. To avoid summary judgment, plaintiff would have to argue (if he had made an argument) that this court find that denial of even one inmate's request, not for the undefined general claim of "religious freedom," but for recognition as a separate group with a claim on Pennsylvania Department of Corrections' facilities and personnel, requires a jury trial. Cruz v. Beto is directly to the contrary.

Moving to the next point, Menei stated that the requests for separate accommodations were denied because "To approve, even in part, this request is contradictory to the goal of the [Pennsylvania Department of Corrections] which is one Islamic group. This request should be considered as one, not in parts." docket no. 35, ¶10. Despite the inelegant phrasing, Menei clearly states two rationales for the denial of plaintiff's requests: a desire not to splinter the Islamic religious groups, and that requests should be considered on an all or nothing basis. If either rationale passes the Turner v. Safley test, judgment must be entered for defendant Menei.

Menei's first rationale is based on a mistake. Examination of the plaintiff's statement of beliefs makes it clear that, even though plaintiff himself refers to his religion as "Moorish American Moslem," docket no. 32 at 1, and whatever the

9

cultural affinity of Moorish Science and Islam, the two are quite different.  Defendant Bigelow recognized this.  Grouping Moorish Science with Islam is a serious theological error.  A government official does not violate the First Amendment, however, by erroneously assessing the nature of different religious beliefs, especially since the government is forbidden from scrutinizing the truth or centrality of those beliefs, and given the lack of development of the record by plaintiff, it is impossible to conclude that Menei's action was anything more than a mistake.

Menei's second rationale for denying plaintiff's requests, which is that requests should be considered "as one, not in parts," has a reasonable relationship to promoting the obviously desirable goal of handling the numerous requests for religious accommodation made by inmates in custody of the Pennsylvania Department of Corrections.  Several of the plaintiff's requests (separate shower facilities and times, distinctive headgear promoting establishment of separate intra-prison group identity and also easily capable of concealing contraband) are objectionable on their face.  Only if Menei were required to provide a legal opinion analyzing Turner v. Safley and its progeny as to each sub-request by an inmate would the policy of making decisions on an all or nothing basis be objectionable.

It would be improper for the federal judiciary to impose the requirement that, when making decisions about religious

10

accommodation, the Pennsylvania Department of Corrections accompany its decision with a quasi-judicial opinion. It would be enormously burdensome to require that the decision explicitly analyze each facet of an inmate's request. Not only would it impose obviously increased costs at the central office level, but it would destroy any reason for having local authorities treat inmate requests as anything short of full scale litigation. The record of this case shows that plaintiff's requests received thoughtful and respectful individualized consideration from the personnel at S.C.I. Houtzdale, including defendants McCullough and Bigelow. To require the central office to process every request from throughout the Commonwealth in the same detail would impose enormous costs that are unjustified.

Since the defendants have defended on the basis that Menei was correct under Turner v. Safley as to each of the accommodations requested by plaintiff, let me make it clear: the Turner v. Safley factors must be applied to Menei's rationales, not to plaintiff's requests, because the relevant "government action" is Menei's decision. This court has no business undertaking de novo scrutiny of plaintiff's requests and determining whether denial of each of them individually would pass muster under Turner v. Safley, because that is not the reason advanced by Pennsylvania Department of Corrections for the denial of plaintiff's requests. As I have said, treating plaintiff's requests as an all or nothing

11

proposition is reasonable (and is similar to what a federal court is commanded to do in considering habeas corpus claims under <u>Rose v. Lundy</u>, 455 U.S. 509 (1982)).  Forcing the Pennsylvania Department of Corrections to adopt a different procedure would impose significant costs.  Finally, given Menei's decision, plaintiff had a reasonable alternative that was obvious, which was to resubmit a different request for accommodation with some of the more obviously problematic parts taken out.  Plaintiff had Bigelow and McCullough's support for two of the eight requests he made, **including the single issue - the holding of separate Friday services - left to address in this litigation**.  Plaintiff also, in September of 2000, could have resubmitted all of his requests in the expectation that RLUIPA would apply to the Pennsylvania Department of Corrections' consideration of them.  To hold that there is an issue of fact whether Menei violated the plaintiff's First Amendment rights in March 2000, because he should have parsed plaintiff's request line by line rather than require plaintiff to submit a more limited request, would literally give the inmates control of the institution.

### III

Finally, even if plaintiff had established that proof of facts in dispute would allow a jury to find the defendants liable, the defense of qualified immunity shields government officials performing discretionary functions from liability for money damages

when their conduct did not violate clearly established rights which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Wilson v. Layne, 526 U.S. 603, 614 (1999). That is, even if defendants were legally wrong, they are entitled to judgment so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. Anderson v. Creighton, 483 U.S. 635, 638 (1987). As stated above, plaintiff does not show that there ever was any violation of a clearly established constitutional right. Plaintiff a fortiori cannot show that any defendant's conduct was objectively unreasonable under the law as it existed in March 2000. Even under RLUIPA, when "inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." Cutter v. Wilkinson, supra, 125 S.Ct. at 2125.

Summary judgment should be entered for the defendants.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 27 April 2006

Keith A. Pesto
United States Magistrate Judge

13

Notice to:

> Albert Morris-El BH-4499
> S.C.I. Fayette
> P.O. Box 9999
> Labelle, PA 15450
>
> Mary Lynch Friedline, Esquire
> 6th Floor Manor Complex
> 564 Forbes Avenue
> Pittsburgh, PA 15219